### BISHOP *v.* WILBANKS, sheriff, *et al.*

The granting or refusing of bail is a matter within the sound discretion of the court below, and this court will not control that discretion unless it has been flagrantly abused. Under the facts presented in the record, it can not be said that there was such a flagrant abuse of discretion as would authorize this court to reverse the judgment denying the application for bail.

Nos. 5075, 5076. NOVEMBER 14, 1925.

Habeas corpus. Before Judge Tarver. Murray superior court. September 5, 1925.

At the August term, 1925, of the superior court of Murray County, a bill of indictment was returned by the grand jury, charging Henry Bishop with the offense of rape against Gertrude Wilson. This indictment is still pending in court. A bench warrant for the arrest of Bishop was issued and placed in the hands of the sheriff, but no arrest was made, on account of his inability to locate the defendant, until August 31, 1925, when the defendant voluntarily surrendered himself to the custody of the sheriff; and since the arrest the sheriff has held and kept the defendant incarcerated in the common jail of Murray county. On August 31, 1925, the accused presented to the judge of the superior courts of the Cherokee Circuit a petition in which he prayed for the writ of habeas corpus against the sheriff, requiring him to produce the petitioner before the judge for the purpose of admitting him to bail and fixing the amount of said bail for his appearance at the next term of court. The writ of habeas. corpus was duly issued, returnable on September 5, 1925. On that date, at the conclusion of the hearing, the court refused the prayer of

Bail 6 C. J. pp. 954, n. 25; 988; n. 91.
Criminal Law 17 C. J. p. 271, n. 41.
Habeas Corpus 29 C. J. pp. 194, n. 47; 195, n. 89.
20

the petitioner that he be permitted to give bail. The hearing was by affidavits; but there was an agreement between counsel for the State and the accused that the court might consider, as evidence upon the hearing, the statements of Gertrude Wilson, against whom the crime was alleged to have been committed, and of one Lula King, which these two had delivered before the presiding judge in a certain investigation conducted by him at a previous hearing of a case against a person charged with the offense of manufacturing whisky, in so far as the testimony given on that occasion was recollected by the court. This agreement was made to avoid the necessity of bringing from North Carolina the witnesses for the State in the rape case, Lula King and Gertrude Wilson. The presiding judge stated that these witnesses had testified before him as follows: "That they were citizens of North Carolina; that they had left North Carolina some considerable time ago to go to Florida, where they had been employed in the harvesting of vegetables; that they had gotten out of employment, and were undertaking to go back to North Carolina; that they had very little money, and were getting rides along the road with tourists, as best they could, in an effort to get back to Catawba County, their old home; that they reached Calhoun, Georgia, and there they were approached by Dock Hall, who, learning that they were going up the Dixie Highway, informed them that he was going up that way for about eighteen miles and that he would be glad to take them that far on their journey; that they got into a car with Dock Hall and Henry and Jim Bishop, the applicants for bail; that they were not familiar with the Dixie Highway, and that when the car reached a point some two or three miles this side of Calhoun, it turned to the right, but that they didn't know it was leaving the Dixie Highway; that they were carried in this car into Murray County and into a secluded section; that they discovered that the parties in the car had some whisky, and they began drinking; that they endeavored to escape from the car, but were not allowed to do so; that they were carried at one time to some place in the woods, the exact location I have forgotten, but they described it as best they could, and that at this point the two Bishops committed rape upon the girl, Miss Wilson. Miss Wilson testified also that after the offense was committed one of the Bishops forced her to accept three dollars. They also claimed that thereafter they

went to a certain store in Murray County; that they were carried there in this same car, and that they approached the storekeeper about getting away from the Bishops and were advised by him to slip away from them some way, and that they did so, and that Dock Hall and perhaps some one else stayed with them in the woods until a later hour in the night, until some other person could carry them somewhere for protection, or stay with them, and that the next morning they were carried to Resaca, where they caught the bus coming to Dalton. Those are not all the details, nor could I undertake to remember all the details. The witness Dock Hall is a material witness in this matter, and he is now confined in the Murray County chain-gang."

At this point in the judge's statement Mr. Neel, counsel for the petitioner, said: "We have an affidavit from him," and the court then made this additional statement: "Dock Hall ought to be here. I don't know what he may say in his affidavit, but in his evidence before me he corroborated the women in all details, except he contended that the girl went voluntarily into the woods with the Bishops; in other respects he corroborated them as to their desiring to get away from the Bishops and employing him to take them away from the Bishops, and as to his staying out in'the woods with them after they had run away from the car, and as to the whisky, and as to the matter of their going to a secluded place and the Bishops going into the woods with the girl; but his contention was that the girl went voluntarily with them; that's the only respect, as I recall, in which his evidence differed from theirs. There is another matter: the women also testified that there was no one there except the two Bishops and the women and Dock Hall. They were the five people who were in the car. And Dock so testified. They testified they were carried to the store in the car, my recollection is, and that there they consulted the storekeeper about getting away from the Bishops; and there was evidence about their having seen Dock Hall's still, they said they saw it, and Dock contended that they did not." And then ensued the following colloquy between counsel and the court: Mr. Steed: "But Dock plead guilty to it being his." Court: "Yes." Mr. Neel: "As to when they saw Dock Hall's still, did they contend that was after they separated from the Bishops?" Court: "I don't think so. I don't remember, though." Mr. Steed: "That was before

they separated from the Bishops." Court: "I am under the impression that it was before they separated, according to their testimony." Mr. Steed: "They also testified that they came from Calhoun to Bob Hall's home and stopped there about noon, and then later drove down to Bud Hall's to see about getting some work done there, and from there they went to the scene of this alleged rape." Court: "Now call your witnesses, swear them, and let them retire." Mr. Neel: "We have only affidavits." Court: "You don't propose to put up your clients for examination?" Mr. Neel: "No sir." Court: "I am not going to grant bail unless you do." Mr. Neel: "We can't help that, your honor; we want to tender the affidavits." Court: "On an application of this character the applicant is a competent witness to testify; and unless you want to have them examined, I don't intend to grant bail." Mr. Steed: "We would like to tender these affidavits." Court: "All right, you can tender the affidavits." Mr. Steed: "Would your honor like to have them read?" Court: "Give them to me. I will read them. I think possibly we can get along faster that way."

After this colloquy the petitioner introduced numerous affidavits; and at the conclusion of the evidence counsel for petitioner requested that they be permitted to argue the matter to the court, and the judge refused to hear argument upon the case, and said: "I don't think that is necessary at all. Affidavits are one thing, and sworn evidence and cross-examination are another and entirely different thing. The affidavit of Dock Hall, which you have submitted, bears no resemblance whatever to the evidence he delivered before me; it differs in many and very vital respects from the evidence he delivered. I am not satisfied from this evidence that I should grant bail in this case. The applicants for bail have the right, on this kind of hearing, to deliver sworn evidence and to be cross-examined. They have made affidavits instead of submitting to cross-examination by the solicitor-general. I presume it is admitted here, without the sheriff of Murray County being questioned on the stand about it, that from June 8, 1925, until last Monday, the applicants have been fugitives from justice, and the sheriff of Murray County was unable to arrest them." Counsel addressed the court and said that petitioner had voluntarily come in Monday and surrendered. To this the court replied, "It is a

matter with you as to whether you put your clients up or not. I am not satisfied from the evidence so far adduced that I should permit them to make bail. If you want them to submit themselves to cross-examination, I will permit them to do so." Counsel then stated that he would like to argue the matter, and the court replied, "I don't think that is necessary. You don't care to submit them for cross-examination?" and counsel answered, "No sir." The court then passed an order denying the application for bail, and the applicant excepted. In the bill of exceptions is a note by the judge that subsequently to the hearing he offered to vacate the order refusing bail and to hear argument at such time as might suit the convenience of counsel and the court.

*Neel & Neel* and *R. Noel Steed,* for plaintiff.

*C. C. Pittman, solicitor-general,* for defendant.

BECK, P. J. The petitioner in this case introduced numerous affidavits tending to show that he is not guilty of the crime charged. His own affidavit was also submitted, in which he denies that he is guilty of the offense alleged in the indictment. Many of the affidavits tend strongly to negative the idea that the petitioner committed the crime with which he is charged. Numerous affidavits were introduced by petitioner, supporting in material particulars his contention that he was not guilty of the offense charged, and that the two females who were witnesses for the State were women of bad character; and tending to show that they were willing, at the time that the crime of rape is said to have been committed, to have permitted any one of several men who were present, for a money consideration, to have sexual intercourse with them. If the evidence for petitioner is credible, the women were of bad character and freely jested with the men in the presence of others upon the subject of sexual intercourse, and indicated their readiness to participate with any man present in the act of sexual intercourse. It is unnecessary to set out in detail or in substance the contents of these affidavits. But the judge who presided at the hearing of this application for bail was the judge of the credibility of all the witnesses introduced; and it was within his province, after hearing the evidence, and in the exercise of a legal discretion, to grant or refuse bail. The granting or refusing of bail is a matter within the sound discretion of the court below, and this court will not control that discretion unless it has been flagrantly

abused. *Lester* v. *State*, 33 *Ga.* 192. It is insisted in the argument of counsel before this court that no jury would convict the petitioner upon the evidence in this record; and that if they should do so, a court would unhesitatingly set the verdict aside. Admitting that this presents the test by which the question as to whether the judge below has abused his discretion or not, we do not feel authorized to disturb the judgment in the case. The woman against whom the crime is charged to have been committed testified positively to the fact, and her evidence is not without corroboration; for the other woman, her companion, testified to the same thing; and there are other circumstances, such as evidence tending to show opportunity for committing the crime, which the trial court could consider. The rule as to whether this court would set aside a verdict which has the approval of the judge below is, that it will not interfere with the refusal of the trial court to grant a new trial upon the ground that the verdict is without evidence to support it, if there be any evidence in the record to support the finding of the jury. This court can not say, without traveling beyond its province, that the court below was unauthorized to believe the witnesses for the State in preference to the witnesses for the petitioner, although the latter are more numerous than the former.

The remark of the judge that unless counsel should introduce his client, the applicant for bail, as a witness, he would refuse bail, can not be held as conclusive proof that the judge did not exercise his discretion in passing upon the issues involved in the case. Nor will his judgment be reversed because of his statement to counsel that it was not necessary for them to make an argument at the hearing, in view of the fact that he subsequently offered to vacate the judgment refusing bail and to hear argument upon the entire case.

The questions presented by the record in Case No. 5076 are the same as those in No. 5075, and are controlled by the judgment therein rendered.

*Judgments affirmed. All the Justices concur.*

RUSSELL, C. J. I concur in all the rulings of law contained in the opinion, but not in every instance in the manner in which they are expressed.